UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

AVIVA CANTOR ZUCKOFF,

06 CV 1496

JUDGE PRESKA

                                    Plaintiff,          :        **VERIFIED COMPLAINT**

          -against-                                     :

THE JEWISH TELEGRAPHIC AGENCY, INC.          :
DEFINED BENEFIT PENSION PLAN,
MARK J. JOFFE, AS THE ADMINISTRATOR          :
OF THE JEWISH TELEGRAPHIC AGENCY,
INC. DEFINED BENEFIT PENSION PLAN,           :
and the TRUSTEES OF THE JEWISH
TELEGRAPHIC AGENCY, INC. DEFINED             :
BENEFIT PENSION PLAN,

                                    Defendants.   :
--------------------------------------------------------------X


## PRELIMINARY STATEMENT

          Plaintiff Aviva Cantor Zuckoff sues Defendants so she can receive benefits based

on her late husband's employment - payments which she needs to avoid slipping into abject

poverty.  Following Plaintiff's husband's death in December 2004, Defendants refused, with no

justifiable reason under federal pension law or the governing pension plan (the "Plan"), to

continue Plaintiff's medical insurance or to pay the widow's benefits to which she is entitled.  As

a result of Defendants' unlawful actions, Plaintiff is consigned to spend her remaining years in

poverty, a consequence federal pension law was designed to prevent.

## JURISDICTION

1. Jurisdiction resides in this Court pursuant to Section 502(e) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e).

2. Jurisdiction is also conferred upon the Court by ERISA §§ 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), and, as an action brought pursuant to a federal statute, by 28 U.S.C. § 1331.

## VENUE

3. The Southern District of New York, where Defendant Plan is administered, is an appropriate venue under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## THE PARTIES

4. Plaintiff Aviva Cantor Zuckoff resides at 49 Fulton Street in New York County. She is the widow of Murray Zuckoff, a vested participant in Defendant Plan, and lives on a fixed income of widow's benefits from the Social Security Administration that are based on her husband's earnings.

5. The Defendants are (1) an employee benefits plan ("the Plan") maintained by the Jewish Telegraphic Agency, Inc. (the "JTA"), the former employer of Plaintiff's late husband, (2) the Plan's administrator, and (3) its trustees. Defendants' principal offices are located at 330 Seventh Avenue, 17th Floor, New York, New York 10001.

## THE PLAN AND THE STATUTORY AND REGULATORY FRAMEWORK

6. The Jewish Telegraphic Agency Inc. Defined Benefit Pension Plan (the "Plan") is a single-employer employee benefits plan sponsored by the JTA. On information and belief, the JTA has enjoyed and continues to enjoy significant tax advantages resulting from

Defendants' claimed adherence to all of the requirements of ERISA, including but not limited to the requirement that the Plan be administered in accordance with federal law, the terms of the Plan's governing documents, and in the sole interest of its participants and beneficiaries.

7. Among the requirements of ERISA, as amended by the Retirement Equity Act of 1984 ("REA"), Pub. L. 98-397, 98 Stat. 1426, is the mandate that all ERISA-qualified plans pay accrued benefits to vested married participants in the form of qualified joint and survivor annuities ("QJSA"). A QJSA provides a lifetime income to the participant and continues to provide benefits to his surviving spouse (if he predeceases her) equal to at least 50% of the benefits that had been payable to the participant during their joint lives. ERISA § 205(a)(1), 29 U.S.C. § 1055(a)(1).

8. A married participant can waive the QJSA form of benefits, but only with his spouse's written consent. Such consent must include the spouse's acknowledgment that she understands she is waiving her right to survivor benefits and must be witnessed by either a plan representative or notary public. ERISA § 205(c)(1) & (2), 29 U.S.C. § 1055(c)(1) & (2).

9. Although the Plan's operating documents had not been formally amended to incorporate the REA when Mr. Zuckoff retired in 1987, the above provisions of the REA are "self-executing" and effective in all ERISA-qualified pension plans, whether or not the plan's operating documents have been formally amended. 26 C.F.R. § 1.401(a)-20, Q&A-42.

## STATEMENT OF FACTS

10. Murray Zuckoff and Plaintiff married in Toronto in 1966. Murray was then 41; Aviva was only 26. (See Aff. of Aviva Cantor Zuckoff ¶ 1, attached as Exh. A.) (Hereinafter "Zuckoff Aff.") They remained together until his death in December 2004. (Zuckoff Aff. ¶ 1.)

3

11. In the early 1970s, Murray began his long career at the JTA, and became a vested participant in the benefits plan it maintained. (Zuckoff Aff. ¶ 2; Letter from Mark Joffe to Aviva Cantor Zuckoff, dated Jan. 28, 2005, attached as Exh. D.)

12. During their marriage, Plaintiff and Murray frequently discussed their plans to provide for each other should one predecease the other. Because Murray was 14 years his wife's senior, they assumed she would survive him. They believed that Plaintiff's needs would be met after his death by his Social Security and pension benefits. (Zuckoff Aff. ¶¶ 2 & 3.)

13. In November 1987, Murray retired at the age of 62 and began collecting a monthly pension of approximately $951.43. (Zuckoff Aff. ¶ 4.)

14. In a letter dated October 16, 1987, from Mark Seal, then the Executive Vice President of the JTA, Murray was told that his "monthly accrued benefit from the pension plan currently is $951.43 . . . . This benefit is for life with ten years guaranteed to your beneficiary." (See Letter from Mark Seal to Murray Zuckoff, dated Oct. 16, 1987, attached as Exh. B.)

15. At no time did Murray elect this form of benefit in lieu of a QJSA and at no time did Plaintiff waive her REA-protected right to survivor benefits. (See Zuckoff Aff. ¶¶ 4 & 5.)

16. No one from the Plan informed Murray or Plaintiff of their right to a QJSA or that the form of payment actually given him did not provide survivor benefits. (See Zuckoff Aff. ¶¶ 4 & 5.)

17. When Murray died in December 2004, Plaintiff applied for widow's benefits. (See Letter dated January 13, 2005, from Peter Fleischman, Esq., to Mark Joffe, attached as Exh. C.) In that application, Plaintiff reminded Defendants that when her late husband had retired in

1987, the Retirement Equity Act of 1984 guaranteed her at least 50% of the benefit to which her husband had been entitled, absent her formal waiver. (See id.)

18. By letter dated January 28, 2005. Defendants notified Plaintiff that they had "concluded that [she was] entitled to no further benefits beyond December 31, 2004," and that it would no longer pay her health insurance premiums. (See Letter from Mark Joffe to Aviva Zuckoff, dated Jan. 28, 2005, attached as Exh. D.)

19. In justifying the denial of widow's benefits, Defendants acknowledged that Murray had been vested in the Plan, and that the Plan under which he had retired became effective on November 1, 1987. According to Defendants, Article 1.10 of that Plan defined the "normal form" of payment as an annuity for the participant's life, with a minimum of 120 monthly payments guaranteed should the participant die within ten years of retirement. Defendants noted that Mr. Zuckoff lived for 17 years following his retirement, and claimed that because they had paid more than the 120 guaranteed minimum payments, "JTA has met its entire obligation to Murray and to [Plaintiff.]" (See Letter from Mark Joffe to Aviva Zuckoff, attached as Exh. D.)

20. In a second letter dated May 26, 2005, Defendants repeated their refusal to pay Plaintiff any widow's benefits. (See Letter from Mark Joffe to Aviva Zuckoff, dated May 26, 2005, attached as Exh. E.) In this letter, Defendants for the first time notified Plaintiff of her right to appeal to the Board of Trustees. (See id.)

21. Plaintiff timely appealed by letter dated July 19, 2005, arguing that the denial of survivor benefits violated the explicit provisions of the REA. (See Letter dated July 19, 2005, from Christopher Wm. Dagg, Esq., to Mark J. Joffe, attached hereto as Exhibit F.)

22. In a "final decision on appeal" dated September 16, 2005, Defendants affirmed their denial of widow's benefits. (See Letter dated Sept. 16, 2005, from Mark Joffe to Aviva Zuckoff and Christopher Dagg, Esq., attached as Exh. G.) Defendants made this decision despite conceding that: (1) the Plan in effect when Murray retired was subject to the REA; (2) the REA provisions are "deemed incorporated" into the Plan, and that, consequently, the form of benefit payable to Murray should have been a qualified joint and survivor annuity; (3) Plaintiff did not waive her right to widow's benefits; and (4) Plaintiff "should receive a monthly accrued benefit" for the rest of her natural life. (See id.)

23. As a result of Defendants' decision, Plaintiff has had to depend entirely on her Social Security widow's benefits for all her expenses, and must reside in subsidized housing (See Letter from Mark Joffe to Aviva Cantor Zuckoff, dated Jan. 28, 2005, attached as Exh. D; Zuckoff Aff. ¶ 6.)

24. Also as a result of Defendants' decision, Plaintiff has been denied medical coverage provided to JTA retirees and the beneficiaries. (See Letter from Mark Joffe to Aviva Cantor Zuckoff, dated Jan. 28, 2005, attached as Exh. D; Zuckoff Aff. ¶ 6.)

25. Defendants' final decision of September 16, 2005, exhausts Plaintiff's administrative remedies, thereby rendering this claim ripe for judicial review.

## FIRST CLAIM FOR RELIEF

26. Under ERISA § 502(a)(3), employee benefit plan participants or their beneficiaries may bring suit "to enjoin any act or practice which violates any provision of this subchapter [ERISA Title I] or the terms of the plan."

27. ERISA, as amended by the REA, provides that all ERISA-qualified defined

6

benefit plans shall pay benefits in the form of a qualified joint and survivor annuity that pays at least 50% of the amount payable during the joint lives of the participant and his spouse. ERISA § 205(a)(1), 29 U.S.C. § 1055(a)(1).

28. Wherefore, Defendants' denial of survivor benefits to Plaintiff violates her rights under ERISA § 205(a)(1), 29 U.S.C. § 1055(a)(1).

### SECOND CLAIM FOR RELIEF

29. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that a plan participant or beneficiary may bring suit in District Court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

30. REA provisions mandating payment of benefits to married participants in the form of a qualified joint and survivor annuity that provides survivor benefits to the spouse of a participant are "self-executing" and effective in all covered pension plans, whether or not the plan's operating documents have been formally amended. 26 C.F.R. § 1.401(a)-20, Q&A-42

31. As required by the REA, Defendant Plan guaranteed that benefits for married participants are payable in the form of a qualified joint and survivor annuity that provides survivor benefits to the participants' spouses. ERISA § 205(a)(1), 29 U.S.C. § 1055(a)(1).

32. Wherefore, Defendants' denial of survivor benefits to Plaintiff violates the terms of the Plan.

### THIRD CLAIM FOR RELIEF

33. ERISA Section 502(a)(3)(B), 29 U.S.C. 1132(a)(3)(B), allows participants to bring suit to obtain "appropriate equitable relief" to redress violations of Title I of ERISA or to

enforce any provisions of Title I or ERISA or of the terms of their employee benefits plan.

34.    Defendants' denial of survivor benefits to Plaintiff is unjustified,

inequitable and violates the remedial purposes of ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that an order be made and a judgment be rendered declaring her rights under the Plan, ordering Defendants to commence payment of survivor benefits and to pay all wrongfully denied benefits due since the date of her husband's death, with interest thereon, and granting such other and further relief as this Court may deem just, equitable, and proper.

DATED:     New York, New York
          February ___ , 2006

Respectfully submitted,

Christopher Wm. Dagg (CWD5395)
LEGAL SERVICES FOR THE ELDERLY
Attorneys for Plaintiff
130 West 42nd Street, 17th Floor
New York, New York 10036-7803
Tel. (212) 391-0120
FAX (212) 719-1939

To:     Mark J. Joffe, Administrator
        Jewish Telegraphic Agency, Inc. Defined Benefit Pension Plan
        330 Seventh Avenue, 17th Floor
        New York, New York 10001

cc:     Secretary of Labor
        200 Constitution Ave. NW
        Washington DC 20210
        (by certified mail)

        Secretary of Treasury
        1500 Pennsylvania Ave. NW
        Washington DC 20220
        (by certified mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                  :
AVIVA CANTOR ZUCKOFF,                             :
                                                  :
                            Plaintiff,            :          **VERIFICATION**
                                                  :
            -against-                             :
                                                  :
THE JEWISH TELEGRAPHIC AGENCY, INC.               :
DEFINED BENEFIT PENSION PLAN,                     :
MARK J. JOFFE, AS THE ADMINISTRATOR              :
OF THE JEWISH TELEGRAPHIC AGENCY,                 :
INC. DEFINED BENEFIT PENSION PLAN,                :
and the TRUSTEES OF THE JEWISH                    :
TELEGRAPHIC AGENCY, INC. DEFINED                  :
BENEFIT PENSION PLAN,                             :
                                                  :
                            Defendants.           :
-----------------------------------------------------------X

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )


        I, AVIVA ZUCKOFF, am Plaintiff in the foregoing action. I have read the

foregoing complaint and hereby declare under penalty of perjury that I know the statements made

therein to be true or, where stated to be based on information and belief, believe them to be true.


Dated: New York, New York
        February 22, 2006

                                                _____
                                                Aviva Cantor Zuckoff
                                                49 Fulton Street, Apt. 13G
                                                New York, New York 10038

Sworn to before me this 22d day
of February , 2006

_____
        NOTARY PUBLIC

CHRISTOPHER W. DAGG
Notary Public, State of New York
No. 02DA6055942
Qualified in New York County
Commission Expires March 12, 2007

10

Exhibit A

AFFIDAVIT OF AVIVA CANTOR ZUCKOFF

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

AVIVA CANTOR ZUCKOFF, being duly sworn, affirms the following under penalty of
perjury:

1.     I am the widow of Murray Zuckoff, and am 66 years old. I met my late husband Murray
       in 1966 and we were married in Toronto on September 22, 1966. Murray was fourteen
       years older than I and we never had children. During our marriage, Murray and I lived
       together as a couple and supported each other financially and emotionally.

2.     Murray started working at the Jewish Telegraphic Agency in the 1970s. He didn't earn
       much, but we managed to get by. Because my work as a writer was mostly on a free-
       lance basis, we depended on his work at JTA for a reliable source of income.

3.     Murray often assured me that I would be taken care of if he passed away before me,
       which we naturally assumed would happen since he was fourteen years older. We
       expected that our modest retirement needs would be met by Social Security and by his
       pension.

4.     Murray was compelled to retire in November 1987, just a few months shy of his 62nd
       birthday. No one from the Jewish Telegraphic Agency ever told us about our right to a
       qualified joint and survivor annuity. Mark Seal, the Executive Vice President of the JTA
       at the time, wrote Murray a letter that said he would receive a monthly check of $951.43
       for life with a guarantees payment of ten years to me. Mr. Seal did not explain that this
       meant that if Murray died after ten years I would receive nothing.

5.     I never consented to waive my right to a survivor annuity, nor was I ever asked to do so.
       As a result, I had always expected I would receive survivor benefits if I outlived Murray.

6. Murray died in December 2004 of a heart attack at the age of 79. Since then, I have struggled financially and my ~~only~~ *main source of* income is widow's benefits from Social Security. Since the JTA denied my claim for survivor's benefits and stopped paying my health insurance premiums, I have had to move to Section 8 housing. I have diabetes but few assets and no family who can help.



Dated: New York, New York

February 22, 2006

AVIVA CANTOR ZUCKOFF

Sworn to before me this ___ day
of February 2006

NOTARY PUBLIC

CHRISTOPHER W. DAGG
Notary Public, State of New York
No. 02DA6055942
Qualified in New York County
Commission Expires March 12, 2007



JEWISH TELEGRAPHIC AGENCY, INC.
165 West 46th Street
New York, NY 10036-2574
(212) 575-9370

MARK A. SEAL
Executive Vice President

October 16, 1987

MEMO TO: Murray Zuckoff

SUBJECT: Meeting with William L. Frost

Firstly, I am writing you this memo in response to
your request for specific information on your accrued
benefits in the JTA Management Pension Plan and other
related considerations:

1)     Your monthly accrued benefit from the
       pension plan currently is $951.43
       (annual amount $11,412.00). This
       benefit is for life with ten years
       guaranteed to your beneficiary.

2)     For the entire period of pension
       benefits, as stated above, you and your
       spouse will receive major medical and
       hospitalization coverage paid by JTA.

Secondly, I would like to schedule a meeting with
William L. Frost, to discuss some of the issues that
you have raised during our various conversations of
the last few weeks. Bill is available on Tuesday,
October 20th, at 10:30 A.M. The meeting would take
place at the Littauer Foundation with you, Bill and
myself. If you are interested, you can call me at
home on Sunday (662-9078) or else let me know on
Monday.

With best wishes.

WASHINGTON
LONDON
PARIS
JERUSALEM
TEL AVIV
JOHANNESBURG
LIMA

TELEX 12-5978 (Jewtelag)
CABLE ADDRESS JEWCORRAU



N  E  W    Y  O  R  K
LEGAL  ASSISTANCE  GROUP

Yisroel Schulman, Esq. *Executive Director*

Sender's Direct Line: (212) 613-5033

January 13, 2005

Mr. Mark Joffe
Executive Editor and Publisher
Jewish Telegraphic Agency, Inc.
330 Seventh Ave., 11th Floor
New York, NY 10001

Re:    Jewish Telegraphic Agency, Inc. Defined Benefit Pension Plan
       Participant:        Murray Zuckoff
       Date of Death:      Dec. 26, 2004
       Beneficiary:        Aviva Cantor Zuckoff

Dear Mr. Joffe:

I represent Aviva Cantor Zuckoff, widow of Murray Zuckoff. Ms. Zuckoff wishes to make a claim for survivor's annuity benefits under the terms of the Jewish Telegraphic Agency, Inc. Defined Benefit Pension Plan (the "Plan").

I understand, from a conversation today with Lenore Silverstein of your office, that the matter of Ms. Zuckoff's benefits is being reviewed by the Plan's attorney, Craig Gumpel, Esq. Of Fox & Fox and by the Plan's actuaries, Consulting Actuaries, Inc.

Ms. Zuckoff also wishes to get clarification of the type and duration of her survivor's benefits under the Plan. As you know, Mr. Zuckoff retired after January 1, 1985, the date in which the provisions of the Retirement Equity Act became effective. As such, by operation of law, she is entitled to receive a benefit of 50% of Mr. Zuckoff's benefit, absent a formal waiver of same by Ms. Zuckoff. Neither she nor I am aware of such a waiver by her.

However, by virtue of a memo from Mark A. Seal, Executive Vice President of the Jewish Telegraphic Agency, Inc. ("JTA"), dated October 16, 1987 (copy enclosed), seems to provide for an optional form of benefit, $951.43 per month for life, with a guarantee of same for his beneficiary for 10 years after his death. While such does not appear to be a qualified form of benefit, Ms. Zuckoff will at least consider same, depending on, among other factors, the present value of same as opposed to a 50% survivor's benefit.

Enclosed please find Ms. Zuckoff's authorization for release of any financial information, as protected by federal privacy regulations, permitting the release of same to this office. Please

Mr. Mark Joffe
January 13, 2005
Page -2-

forward the appropriate application for benefits forms for Ms. Zuckoff, if necessary, to this
office.

   Thank you for your attention to this matter. If you have any questions or require anything
further, please do not hesitate to contact the undersigned.

                                        Very truly yours,

                                        Peter N. Fleischman
                                        Staff Attorney

Enclosures
cc:    Ms. Aviva Cantor Zuckoff (w/o enc.)



Yisroel Schulman, Esq. *Executive Director*

## CONSENT TO RELEASE FINANCIAL INFORMATION
### PROTECTED BY STATE AND FEDERAL LAW

I, _AVIVA CANTOR, A/KA AVIVA CANTOR ZUCKOFF_ hereby authorize and give my consent to _JEWISH TELEGRAPHIC AGENCY, INC._ to disclose all information available concerning my financial condition, including, but not limited to, credit reports, tax information, requests or demands for payment, and/or legal activity to which I am a party.

Please release ALL information to NEW YORK LEGAL ASSISTANCE GROUP, and/or its agent(s) and/or employee(s), 450 West 33rd Street, 11th Floor, New York, NY 10001. The information will be used at my request in connection with my case.

This consent will remain in effect until ___Jan. 12, 2006___

I understand that my records are protected under the State and Federal confidentiality regulations and cannot be disclosed without my written consent unless otherwise provided for in the regulations.

I also understand that I may revoke this consent at any time except to the extent that action has already been taken in reliance on it.

_____
Signature of Client

_AVIVA CANTOR ZUCKOFF_
Printed Name

_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_
Social Security Number

_Jan. 12, 2005_
Date

Acknowledged before me this
_12th_ Day of
_January_, 20 _05_

_____

PETER N. FLEISCHMAN
Notary Public, State of New York
No. 4796230
Qualified in New York County
Commission Expires Feb. 3, 20.06



*JEWISH TELEGRAPHIC AGENCY, INC.*
*165 West 46th Street*
*New York, NY 10036-2574*
*(212) 575-9370*

*MARK A. SEAL*
*Executive Vice President*

October 16, 1987

MEMO TO: Murray Zuckoff

SUBJECT: Meeting with William L. Frost

Firstly, I am writing you this memo in response to
your request for specific information on your accrued
benefits in the JTA Management Pension Plan and other
related considerations:

1)      Your monthly accrued benefit from the
        pension plan currently is $951.43
        (annual amount $11,412.00). This
        benefit is for life with ten years
        guaranteed to your beneficiary.

2)      For the entire period of pension
        benefits, as stated above, you and your
        spouse will receive major medical and
        hospitalization coverage paid by JTA.

Secondly, I would like to schedule a meeting with
William L. Frost, to discuss some of the issues that
you have raised during our various conversations of
the last few weeks. Bill is available on Tuesday,
October 20th, at 10:30 A.M. The meeting would take
place at the Littauer Foundation with you, Bill and
myself. If you are interested, you can call me at
home on Sunday (662-9078) or else let me know on
Monday.

With best wishes.

*WASHINGTON*
*LONDON*
*PARIS*
*JERUSALEM*
*TEL AVIV*
*JOHANNESBURG*
*LIMA*
*TELEX 12-0976 (Jewteleg)*

Retirement Age. The calculation of your Late Retirement Benefit
is based on IRS Regulations which would generally provide, for
each Plan Year past Normal Retirement Age, a Late Retirement
Benefit equal to the greater of the following:

(a) the retirement benefit you have actually earned or
"accrued" as of the end of the Plan Year in which you
actually retire, or

(b) the actuarial equivalent of the benefit you were
entitled to as of the close of the Plan Year immediately
preceding your actual retirement date.

There are other laws that may require the Plan to begin
distributions to you while you are still employed. If
distributions are made to you before you actually retire, your
Late Retirement Benefit will be adjusted for these distributions.

4.   Death

Your beneficiary will receive benefits payable upon your
death which are subject to certain limitations imposed by law.
Death benefits will be equal to the actuarial equivalent of your
Accrued Benefit.

If you are married at the time of your death, your spouse
will be the beneficiary of the death benefit, unless you
otherwise elect in writing on a form to be furnished to you by
the Administrator. IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER
THAN YOUR SPOUSE, HOWEVER, YOUR SPOUSE MUST IRREVOCABLY CONSENT
TO WAIVE ANY RIGHT TO THE DEATH BENEFIT. YOUR SPOUSE'S CONSENT
MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN
REPRESENTATIVE AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.

If no valid waiver is in effect, the death benefit payable to
your spouse will be in the form of a survivor annuity, that is,
periodic payments over the life of your spouse. Your spouse may
direct that payments begin immediately after your death. The size
of the monthly payments will depend on the value of your death
benefit at the time of your death. Your death benefit may be
distributed in an alternative method, such as a single lump sum
or in installments, provided your spouse consents in writing to
an alternative form.

Generally, the period during which you and your spouse may
waive this survivor annuity begins as of the first day of the
Plan Year in which you reach age 35 and ends when you die. The
Administrator must provide you with a detailed explanation of the
survivor annuity. This explanation must be given to you during

the period of time beginning on the first day of the Plan Year in which you will reach age 32 and ending on the first day of the Plan Year in which you reach age 35.

It is, therefore, important that you inform the Administrator when you turn age 32 so that you may receive this information.

If, however,

(a)  your spouse has validly waived any right to the death benefit in the manner outlined above,

(b)  your spouse cannot be located; or

(c)  you are not married at the time of your death,

then your death benefit will be paid to the beneficiary of your own choosing in installments or as a single lump sum, as you or your beneficiary may elect. You may designate the beneficiary on a form to be supplied to you by the Administrator. If you change your designation, your spouse must again consent to the change.

Under a special rule, you and your spouse may waive the survivor annuity form of payment any time before you turn age 35. However, any waiver will become invalid at the beginning of the Plan Year in which you turn age 35, and you and your spouse will be required to make another waiver.

Regardless of the method of distribution selected, your entire death benefit must be paid to your beneficiaries within five years after your death. However, if your spouse is your designated beneficiary, then payment of your death benefit may be delayed until the year in which you would have attained age 70 1/2. Minimum distributions must then be made over a period which does not exceed your spouse's life expectancy.

Since your spouse has certain rights in the death benefit, you should immediately report any change in your marital status to the Administrator.

5.  Disability

Under your Plan, disability is defined as a physical or mental condition resulting from bodily injury, disease, or mental disorder which renders you incapable of continuing your usual and customary employment with your Employer. Your disability will be determined by a licensed physician chosen by the Administrator.

10

Vesting Schedule

| Years of Service | Percentage |
|---|---|
| Less than 2 | 0 % |
| 2 | 20 % |
| 3 | 40 % |
| 4 | 60 % |
| 5 | 80 % |
| 6 | 100 % |

Your vested percentage will not be less than your vested percentage under the Plan before this amendment and restatement.

Years of Service prior to the time you reached age 18 will not be counted for vesting purposes.

8.  Benefit Payment Options

There are various methods by which benefits may be distributed to you from your Plan. The method depends on your marital status, as well as the elections you and your spouse make. All methods of distribution, however, have equivalent values. The rules under this Section apply to all distributions you will receive from the Plan, whether by reason of retirement, termination, or any other event which may result in a distribution of benefits.

If you are married on the date your benefits are to begin, you will automatically receive a joint and 50% survivor annuity, unless you otherwise elect. This means that if you die and are survived by a spouse, your spouse will receive a monthly benefit for the remainder of his life equal to 50% of the monthly benefit you were receiving at the time of your death. You may elect a joint and 75% or 100% survivor annuity, which is the actuarial equivalent of your Normal Retirement Benefit, instead of the standard joint and 50% survivor annuity. It should be noted that a joint and survivor annuity may provide a lower monthly benefit than other forms of payment. You should find out the differences before making such election.

If you are not married on the date your benefits are to begin, you will automatically receive a life annuity, which means you will receive payments for as long as you live.

You may, however, elect to waive these forms of payment, subject to the following rules.

12

When you are about to receive any distribution, the Administrator will explain the joint and survivor annuity or the life annuity to you in greater detail. You will be given the option of waiving the joint and survivor annuity or the life annuity form of payment during the 90 day period before the annuity is to begin. IF YOU ARE MARRIED, YOUR SPOUSE MUST IRREVOCABLY CONSENT IN WRITING TO THE WAIVER IN THE PRESENCE OF A NOTARY OR A PLAN REPRESENTATIVE. You may revoke any waiver. The Administrator will provide you with forms to make these elections. Since your spouse participates in these elections, you must immediately inform the Administrator of any change in your marital status.

If you and your spouse elect not to take a joint and survivor annuity, or if you are not married when your benefits are scheduled to begin and have elected not to take a life annuity, you may elect an alternative form of payment. This payment may be made in one of the following methods:

(a) a single lump-sum payment in cash or in property;

(b) the purchase of a different form of annuity;

(c) equal installments over a period of not more than your assumed life expectancy (or your and your beneficiary's assumed life expectancies) determined at the time of distribution.

GENERALLY, WHENEVER A DISTRIBUTION IS TO BE MADE TO YOU ON OR AS OF AN ANNIVERSARY DATE, IT MAY BE MADE ON SUCH DATE OR AS SOON THEREAFTER AS IS PRACTICABLE. HOWEVER, UNLESS YOU ELECT IN WRITING TO DEFER THE RECEIPT OF BENEFITS, NO DISTRIBUTION MAY BEGIN LATER THAN THE 60TH DAY AFTER THE CLOSE OF THE PLAN YEAR IN WHICH THE LATEST OF THE FOLLOWING EVENTS OCCURS:

(a) the date on which you reach the age of 65 or your Normal Retirement Age;

(b) the 10th anniversary of the year in which you became a participant in the Plan;

(c) the date you terminated employment with your Employer.

Regardless of whether you elect to delay the receipt of benefits, there are other rules which generally require minimum payments to begin no later than the April 1st following the year in which you reach age 70 1/2. You should see the Administrator if you feel you may be affected by this rule.

13



Yisroel Schulman, Esq. Executive Director

## CONSENT TO RELEASE FINANCIAL INFORMATION
## PROTECTED BY STATE AND FEDERAL LAW

I, AVIVA CANTOR, A/K/A AVIVA CANTOR ZUCKOFF hereby authorize and give my consent to JEWISH TELEGRAPHIC AGENCY, INC. to disclose all information available concerning my financial condition, including, but not limited to, credit reports, tax information, requests or demands for payment, and/or legal activity to which I am a party.

Please release ALL information to NEW YORK LEGAL ASSISTANCE GROUP, and/or its agent(s) and/or employee(s), 450 West 33rd Street, 11th Floor, New York, NY 10001. The information will be used at my request in connection with my case.

This consent will remain in effect until ____Jan. 12, 2006____

I understand that my records are protected under the State and Federal confidentiality regulations and cannot be disclosed without my written consent unless otherwise provided for in the regulations.

I also understand that I may revoke this consent at any time except to the extent that action has already been taken in reliance on it.

_____
Signature of Client

AVIVA CANTOR ZUCKOFF
Printed Name

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
Social Security Number

Jan. 12, 2005
Date

Acknowledged before me this
12th Day of
January , 20 05

PETER N. FLEISCHMAN
Notary Public, State of New York
No. 4795230
Qualified in New York County
Commission Expires Feb. 3, 2006

Exhibit D



MARK J. JOFFE
Executive Editor and Publisher

*The Global News Service of the Jewish People*                    www.jta.org

World Headquarters: 330 Seventh Ave. • 17th Floor • New York, NY 10001 • Phone: 212-643-1890, ext. 201 • Fax: 212-643-8498 • E-Mail: mjoffe@jta.org

January 28, 2005

Ms. Aviva Cantor Zukoff
225 West 106th Street, Apt #3J
New York, NY 10025

Dear Aviva:

Please let me express, once again, our condolences on the passing of your husband, Murray.

In an effort to provide you with accurate and timely information about the benefits to which you are entitled, we asked our attorney and our actuary to review all the documentation.

As you know, Murray was vested in the JTA Defined Benefit Pension Plan. Since his retirement in November 1987, he had been receiving his monthly pension benefit of $951.43. In addition, JTA paid for medical coverage for both Murray (until he opted for Oxford Medicare Advantage) and you. These benefits were outlined in a letter dated October 16, 1987, from Mark Seal, JTA's executive vice president at the time, to Murray Zuckoff.

Murray's pension plan became effective on November 1, 1987. Article 1.10 of the plan provides the formula that was used to calculate his retirement benefits. This article also defines the normal form of payment as an annuity for the life of the participant, with a minimum of 120 payments guaranteed. This means that if Murray passed away less than 10 years after his retirement, his beneficiary (you) would have been guaranteed the remaining payments, up to 120 total. If he lived beyond the 10 years (from his retirement date), he would receive pension benefits for the remainder of his natural life. This, in fact, was the case. Murray lived and received pension benefits from JTA for more than 17 years after he retired.

According to the plan, JTA has met its entire obligation to Murray and to you, Aviva. Because JTA is committed to providing all benefits that its employees, former employees and their beneficiaries are entitled to, we asked our attorney and actuary to review all relevant documents. After careful study, they have concluded that you are entitled to no further benefits beyond December 31, 2004.

This includes the medical benefits you have been receiving, which terminate with the pension payments (as outlined in Mark Seal's letter of October 16, 1987).As a result, JTA will no longer pay your HIP health insurance premiums. To ensure that you retain coverage by HIP, please pay the full premium on the January invoice. I have enclosed a copy of the invoice for your convenience.

Again, our heartfelt condolences.

Sincerely,

Mark J. Joffe
Executive Editor and Publisher

cc: Peter N. Fleishman

JEWISH TELEGRAPHIC AGENCY INC. • NEW YORK • WASHINGTON • JERUSALEM • MOSCOW • PARIS • TORONTO • BUENOS AIRES • SYDNEY • JOHANNESBURG

MARK J. JOFFE
Executive Editor and Publisher

*The Global News Service of the Jewish People*

www.jta.org

World Headquarters: 330 Seventh Ave. › 17th Floor • New York, NY 10001 › Phone: 212-643-1890, ext. 201 • Fax: 212-643-8498 › E-Mail: mjoffe@jta.org

May 26, 2005

Ms. Aviva Cantor Zukoff
225 West 106th Street, Apt. #3J
New York, NY 10025

Dear Aviva:

As the Plan Administrator of the Jewish Telegraphic Agency, Inc. Defined Benefit
Pension Plan (the "Plan"), I have continued to investigate the issued raised by the letter
from your attorney dated January 13, 2005. The purpose of this letter is to inform you of
the facts that we have been able to ascertain so far and to apprise you of your right to
appeal the denial of your claim for benefits.

First, when Murray Zuckoff decided to retire effective November 1, 1987, he was
informed that his "monthly accrued benefit from the pension plan currently is $951.43
(annual amount $11,412.00). This benefit is for life with ten years guaranteed to your
beneficiary." This information is set forth in a memo dated October 16, 1987 from Mark
A. Seal, then JTA's executive vice president to Murray Zuckoff ("Seal Memo").

As explained in my letter to you dated January 28, 2005, the form of benefit described in
the Seal Memo is the "Basic Benefit Formula" set forth in Article 1.10 of the Plan as it
existed at the time of Murray's retirement. This benefit is paid as a monthly annuity for
the life of the participant, with a minimum of 120 payments guaranteed. This means that
if Murray passed away less than 10 years after his retirement, his beneficiary (you) would
have been guaranteed the remaining payments, up to 120 in total. Since Murray lived
more than 10 years after his retirement date, he received monthly annuity payments of
$951.43 for the reminder of his natural life. Accordingly, the Plan has satisfied its entire
obligation as set forth in the Seal Memo.

Second, the calculation of Murray's monthly accrued benefit as set forth in the Seal
Memo was incorrect. Murray retired about one month prior to his 62nd birthday. Under
the terms of Articles 1.10 and 5.03(b) of the Plan, the monthly accrued benefit under the
benefit for life with ten years guaranteed option should have been $770.11.

Third, if Murray had elected the Joint & 50% Survivorship benefit option, the monthly
accrued benefit would have been $692 per month, in accordance with Articles 5.08 and
5.09 requiring actuarially equivalent benefits. If Murray had elected the Joint & 50%
Survivorship benefit option, you would have been entitled to receive 50% of that monthly
amount, or $346, for the rest of your natural life. Therefore, the monthly benefit that

Murray actually received was approximately $260 ($951.43 - $692) greater than what he would have received if he had elected the Joint & 50% Survivorship benefit option. The present value of such overpayments is approximately $93,000. Additionally, the present value of the $346 per month amount (50% Survivorship option) is approximately $44,400.

Fourth, any claim that you might have for the 50% Survivorship option would have to be offset by the overpayments that Murray received for over seventeen (17) years. Larsen v. NMU Pension Plan Trust, 767 F. Supp. 554, 558 (S.D.N.Y. 1991). Therefore, even assuming that the Plan should have been paying according to the Joint & 50% Survivorship benefit option, it has already paid benefits in excess of what should have been paid under the terms of the Plan.

In view of the foregoing, the Plan must reiterate its denial of your claim for benefits as set forth in my letter to you dated January 28, 2005.

However, under the terms of the amended and restated Plan, which became effective on January 1, 1997, you have the right pursuant to Section 6.3, to appeal this denial by filing a written notice of appeal setting forth the reasons for disputing the above determination. You must include a written statement of the reasons why you believe that your claim should be allowed as well as any supporting documents. You should also provide any and all documents you have relating to any benefit election and/or any calculation or payment of benefits under the Plan so that we may determine if either Murray or you were misled in any way.

In connection with any appeal that you may elect to file, either you or your representative may inspect or obtain copies of pertinent documents and records to the extent not inconsistent with other participants' and beneficiaries' rights of privacy. You may submit your appeal at any time within sixty (60) days of the date that you receive this letter. Please address your appeal to Mark J. Joffe, Plan Administrator of the Jewish Telegraphic Agency, Inc. Defined Benefit Pension Plan, 330 Seventh Avenue, 17th Floor, New York, New York 10001.

Within sixty (60) days after receiving notice of your appeal (or within 120 days, if special circumstances require an extension of time and written notice of the extension is given), the Plan Administrator will provide you and your representative, if any, a written statement of the Administrator's final decision with respect to your claim, including the reasons for such decision and the particular Plan provisions upon which it is based. If the Administrator's final decision constitutes a denial or partial denial of your claim, you will have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act.

Enclosed please find the following documents:

\\ny-srv01\1055728v01

1.    Jewish Telegraphic Agency, Inc. Defined Benefit Pension Plan and Trust
      (effective January 1, 1984); and

2.    Jewish Telegraphic Agency, Inc. Defined Benefit Pension Plan (effective
      January 1, 1997).

Sincerely,

Mark J. Joffe
Plan Administrator of the Jewish Telegraphic Agency, Inc. Defined Pension Plan

Encls.

cc:    Christopher Dagg, Esq. (w/ encls.)

# LEGAL SERVICES FOR THE ELDERLY
### MID-ATLANTIC PENSION COUNSELING PROJECT
130 West 42nd Street, Suite #1700
New York, New York 10036
Tel.: (212) 391-0120
Fax: (212) 719-1939

Christopher Wm. Dagg
Staff Attorney
*Direct Line: (646) 442-3304*

July 19, 2005

Mark J. Joffe, Plan Administrator
Jewish Telegraphic Agency, Inc., Defined Benefit Pension Plan
330 Seventh Avenue, 17th Floor
New York, New York 10001

Re: Aviva Cantor Zuckoff

Dear Mr. Joffe:

By this letter Mrs. Zuckoff appeals the denial of her claim for survivor benefits as stated in your letter of May 26, 2005.

In your letter, you correctly stated that the late Mr. Zuckoff retired in November 1987 and that he had been receiving the benefits set out in the "Seal Memo" and Section 1.10 of the Plan in effect at the time of Mr. Zuckoff's retirement until his death last year. This, however, is irrelevant to Mrs. Zuckoff's appeal, which instead rests on the same legal argument she has repeatedly made and that has been repeatedly ignored: that the denial of survivor benefits violates federal law, specifically those amendments to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq, made by the Retirement Equity Act of 1984 ("REA"), Pub. L. 98-397, 98 Stat. 1426 (amending 26 U.S.C. § 401(a)(11); 26 U.S.C. § 417; 29 U.S.C. § 1055.) The REA unambiguously mandates that all defined benefit pension plan benefits "shall be provided in the form of a qualified joint and survivor annuity" that pays "no less than 50% of the amount of . . . the annuity . . . payable during the joint lives of the participant and his spouse." See 29 U.S.C. § 1055(a)(1), (b)(1)(A) & (d)(1).

In your letter, you claim that the denial of survivor benefits can be justified by the

LSC

MID-ATLANTIC
PENSION
COUNSELING
PROJECT

terms of the 1984 Plan. Such a claim implies that the 1984 Plan failed to make the qualified joint and survivor annuity (QJSA) the automatic form of benefits, which constitutes a clear violation of the REA. That the Plan was not properly amended is ultimately immaterial to Mrs. Zuckoff's legal claim. The REA's amendments to ERISA and the Internal Revenue Code are "self-executing," In re Lefkowitz, 767 F. Supp. 501, 508 (S.D.N.Y. 1991), and they guarantee survivor benefits whether or not a plan's operating documents have been amended to incorporate their provisions. See, e.g., 26 C.F.R. § 1.401(a)-20, Q&A-42 (A plan will not fail to satisfy the qualification requirements of 401(a) merely because it is not amended to provide the survivor annuities required by the REA. "The plan must, however, satisfy those requirements in operation."); Lefkowitz v. Arcadia Trading Co. Ben. Pension Plan, 996 F.2d 600, 604 (2d Cir. 1993), affirming In re Lefkowitz, 767 F. Supp. 501 (S.D.N.Y. 1991). While the failure to incorporate these specific provisions into the Plan documents jeopardizes the Plan's tax-qualification, 26 U.S.C § 401(a)(11); 26 C.F.R. § 1.401(a)-20 Q&A-1, it does not abrogate Mrs. Zuckoff's rights to survivor benefits.

The late Mr. Zuckoff's benefits should therefore have been paid in the form of a QJSA unless he elected otherwise with his wife's written and notarized consent. 29 U.S.C. § 1055(c)(2). Mr. Zuckoff never made such an election, and Mrs. Zuckoff never consented to waive her survivor benefits. (See Aff. of Aviva Zuckoff, attached hereto as "Exh. A.") as you do not assert anything to the contrary, Mrs. Zuckoff is therefore entitled as a matter of law to no less than one-half of the annuity that was payable during the joint lives of her late husband and herself. 29 U.S.C. § 1055(d).

Rather than address Mrs. Zuckoff's argument, you seem to argue, irrelevantly, that Mrs. Zuckoff actually enjoyed a windfall of sorts. In support, you cite Larsen v. NMU pension Plan Trust of the NMU Pension & Welfare Plan, 767 F. Supp. 554 (S.D.N.Y. 1991), a case involving pre-REA law. Besides once again utterly ignoring the REA, your argument also ignores overpayment recovery rules established by the Secretaries of the Treasury and the Department of Labor. Section 6.04 of IRS Revenue Procedure 2003-44, 2003-1 C.B. 105 (June 23, 2003), sets forth the procedures a plan administrator must follow to correct a failure to obtain spousal consent to a form of benefits other than a qualified joint and survivor annuity. First, the plan sponsor must notify the participant and spouse and offer them the opportunity to provide the requisite consent. Id. The Procedure then provides that the participant may repay the distribution actually made and receive the qualified joint and survivor annuity. Id. It does not, however, authorize recovery from the spouse. The Procedure instead states that if spousal consent to the prior distribution cannot be obtained because, for example, the spouse refuses to consent, the spouse "is entitled to a benefit under the plan equal to the portion of the qualified joint and survivor annuity that would have been payable . . . upon the death of the participant had a qualified joint and survivor annuity been provided to the participant . . . ." Id. It concludes, "Such spousal benefit must be provided if a claim is made by the spouse." Id. (Emphasis added.) Mr. Zuckoff, as far as we are aware, never elected to waive the qualified joint and survivor annuity. (See Aff. of Aviva Zuckoff, attached as "Exh. A.") More important, Mrs. Zuckoff has never consented and does not now consent to a waiver of the qualified joint and survivor annuity form of benefits guaranteed her by the REA. (See Aff. of Aviva Zuckoff, attached as "Exh. A.")

She also hereby repeats her claim for her spousal benefits.

Rulings by the Department of Labor, moreover, make clear that recoupment is not the appropriate remedy in this case. The authority to recoup overpayments fact-specific. Dep't of Labor ERISA Op. Letter No. 77-07. Thus, an individualized assessment must precede any reduction in benefits. In making this assessment, the plan fiduciaries are obligated to consider the hardship the beneficiary would suffer. Dep't of Labor ERISA Op. Letter No. 77-08. The facts and equities in this case overwhelmingly weigh in favor of Mrs. Zuckoff. First, the alleged overpayments were clearly not her fault, but were due to the administrator's neglect. Second, Mrs. Zuckoff had no reason to suspect that an overpayment had occurred; her husband was receiving the amount of benefits stated in the "Seal Memo." Third, the alleged overpayment went undetected for nearly seventeen years; during this long duration, Mrs. Zuckoff reasonably came to expect she would receive half that amount should she outlive her husband. Finally, Mrs. Zuckoff has limited resources and receives only a small Social Security benefit (See Aff. of Aviva Zuckoff, attached as "Exh. A.") The pension fund and its sponsor, by contrast, can far more easily absorb any overpayments caused by administrative error. The prudent course of action, therefore, is to forego further efforts to seek recovery against Mrs. Zuckoff.

Reducing future payments to recoup an overpayment is, moreover, justified, if ever, only "if other reasonable attempts to collect the erroneous amount have failed." Dep't of Labor ERISA Op. Letter No. 77-07. There is no suggestion that alternative means were explored. In fact, where, as here, the overpayment is because of administrative error, the plan's first recourse is against the negligent administrator. Dep't of Labor ERISA Op. Letter No. 77-08.

As a result of this erroneous denial of survivor benefits, Mrs. Zuckoff has found herself bereft not only of her husband of many years but also in precisely the dire economic circumstances Congress intended to relieve in enacting the REA. S. Rep. 98-575 (1984), reprinted in 1984 U.S.C.C.A.N. 2397, 2547; Lasche v. George W. Lasche Basic Profit Sharing Plan, 111 F.3d 863, 867 (11th Cir. 1997) (REA reflects public policy of ensuring a steady steam of retirement benefits to surviving spouses). Mrs. Zuckoff hopes to avoid a lengthy appeal process and ensuing litigation to enforce her rights to one-half of the annuity benefits that would have been payable had a qualified joint and survivor annuity properly been provided during her late husband's lifetime, retroactive to the date of his demise.

Should additional information be needed, please do not hesitate to contact me. Please note that Mrs. Zuckoff wants further correspondence directed exclusively to my attention and not to her. Thank you for your anticipated prompt cooperation.

Sincerely yours,

Christopher Wm. Dagg

encl. (Auth. & Release)
cc A. Zuckoff

3

## AFFIDAVIT OF AVIVA ZUCKOFF

STATE OF NEW YORK )
                      ) ss.:
COUNTY OF NEW YORK )

AVIVA CANTOR ZUCKOFF, being duly sworn, affirms the following under penalty of perjury:

1.   I am the widow of Murray Zuckoff. We married on September 22, 1966, and remained married until he passed away last year.

2.   When Murray retired in 1987, no one from the Jewish Telegraphic Agency, Inc., Defined Benefit Pension Plan ever advised us of the qualified joint and survivor annuity form of benefits, or of our right to waive that for another form of benefit.

3.   I never consented to waive my right to a joint and survivor annuity. In fact, we had always expected I would receive a survivor benefit if I outlived Murray.

4.   Since Murray died, I have struggled financially on Social Security payments. Any additional income would help me greatly in making ends meet.

Dated: New York, New York
     July 19, 2005

                                          AVIVA CANTOR ZUCKOFF

Sworn to before me this 19th day
    of July, 2005

NOTARY PUBLIC

**STACEY SIMCOX**
Notary Public, State of New York
No. 02SI6112776
Qualified in Queens County
Commission Expires July 12, 20__

Exhibit G

September 16, 2005

VIA REGISTERED MAIL, RETURN
RECEIPT REQUESTED & U.S. MAIL      VIA HAND DELIVERY

Ms. Aviva Cantor Zuckoff              Christopher Wm. Dagg, Esq.
49 Fulton #13G                        Legal Services for the Elderly
New York, NY  10038                   130 West 42nd Street, Suite #1700
                                      New York, NY 10036

        Re:    Final Decision on Appeal of Aviva Cantor Zuckoff Claim

Dear Ms. Zuckoff and Mr. Dagg:

As the Plan Administrator of the Jewish Telegraphic Agency, Inc. Defined Benefit
Pension Plan (the "Plan"), I have received an appeal from Aviva Cantor Zuckoff in
connection with the denial of her claim for survivor benefits. This appeal consists of a
three-page letter from Mr. Dagg from Legal Services for the Elderly, Ms. Zuckoff's
authorized representative, and a one-page "Affidavit of Aviva Zuckoff" sworn to on July
19, 2005.

The Plan has carefully considered all of the information and legal authorities presented
by Ms. Zuckoff. For the reasons explained below, Ms. Zuckoff's appeal is denied.

The Plan's initial denial and Ms. Zuckoff's appeal address several legal and factual issues
which the Plan assumes to be true for purposes of this appeal:

1.      Murray Zuckoff, Ms. Zuckoff's husband since 1966, retired from Jewish
Telegraphic Agency Inc. effective November 1, 1987 and received the benefits as set
forth in a memo to Mr. Zuckoff dated October 16, 1987 from Mark A. Seal ("Seal
Memo"), then JTA's executive vice president:

        Your monthly accrued benefit from the pension plan currently is $951.43
        (annual amount $11,412.00). This benefit is for life with ten years
        guaranteed to your beneficiary.

2.      Murray Zuckoff received a monthly pension of $951.43 for just over seventeen
(17) years, until his death on December 26, 2004.

3.      The calculation of Mr. Zuckoff's monthly accrued benefit as set forth in the Seal
Memo was incorrect. Mr. Zuckoff retired about one month prior to his 62nd birthday.
Under the terms of Articles 1.10 and 5.03(b) of the Plan, the monthly accrued benefit
under the benefit for life with ten years guaranteed option should have been $770.11.

4.      At the time of Murray Zuckoff's retirement, the Plan did not by its terms require
that a participant's spouse waive the Joint and 50% Survivor Annuity in writing.

ny-srv01\1118653v01

5. Ms. Zuckoff contends that she never consented to waive her right to a joint and survivor annuity and the Plan has not located any written waiver signed by Ms. Zuckoff.

6. The Retirement Equity Act of 1984 ("REA") requires that all defined benefit pension plans, including the Plan, provide that the accrued benefit payable to a participant such as Mr. Zuckoff be provided in the form of a qualified joint and survivor annuity, which means "an annuity for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of ... the amount of the annuity which is payable during the joint lives of the participant and the spouse, and which is the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. § 1055(d). This form of benefit must be provided unless the spouse consents in writing to waive the survivor benefit. These provisions are deemed incorporated into the Plan notwithstanding the fact that the Plan was not officially amended to include them at the time of Mr. Zuckoff's retirement.

7. Pursuant to the terms of the Plan, including the above-described "deemed incorporated" provisions of the REA, and assuming that Ms. Zuckoff did not sign a proper written consent waiving her right to spousal survivorship benefits, Mr. Zuckoff should have received a monthly accrued benefit equal to $692 per month and Ms. Zuckoff should receive a monthly accrued benefit of $346 per month after Mr. Zuckoff's death for the rest of her natural life.

8. For more than 17 years, Mr. Zuckoff received a monthly pension benefit approximately $260 ($951.43 - $692) greater than what he would have received under the Joint & 50% Survivorship option. The present value of these overpayments is approximately $93,000.

9. The present value of the $346 per month that Ms. Zuckoff should have received under the Joint & 50% Survivorship option after Mr. Zuckoff's death is approximately $44,400.

In view of the above facts and law, the question presented by this appeal is should a surviving spouse receive survivorship benefits where the present value of such benefits is less than the present value of the overpayments that the participant has already received? In other words, can a participant and his spouse receive more in pension benefits from the Plan than they would be entitled to receive pursuant to the terms of the Plan (as deemed amended by the REA)? After analyzing the arguments raised by Ms. Zuckoff's appeal, I must conclude that the answer to both of these questions is no.

First, Ms. Zuckoff argues that the offset rule described in Larsen v. NMU Pension Plan Trust, 767 F. Supp. 554, 558 (S.D.N.Y. 1991), does not apply to her claim. In Larsen, the court stated:

> The goal of this action is to restore plaintiff to the position she would have been in had her husband not been induced by material misrepresentations to waive the Husband and Wife Pension. ... To disregard $5800 in benefits plaintiff would not have received but for her husband's ill-

induced waiver would constitute a windfall to plaintiff at the expense of other Plan participants.

Id. In this appeal, the question is how to restore Ms. Zuckoff to the position she would have been in had her husband been offered the Joint and 50% Survivorship Option and assuming it not been validly waived. Just as in Larsen, to disregard the $93,000 in benefits that Ms. Zuckoff would not have received but for the failure to be offered and receive the Joint and 50% Survivorship Option would similarly constitute a windfall to Ms. Zuckoff at the expense of the other Plan participants. In sum, the offset rule described in Larsen applies to Ms. Zuckoff's claim.

Second, Ms. Zuckoff contends that it is not proper to recoup an overpayment in this manner because the overpayments were not her fault, but were due to the administrator's neglect. The Plan's review of the circumstances surrounding the Seal Memo leads to the conclusion that the overpayments were not due to the administrator's neglect, but were rather the result of a miscalculation and a failure to apply the REA by the Plan's actuary in 1987. The Plan is in fact currently considering pursuing available remedies against the Plan's former actuary. However, regardless of the results of those efforts, Ms. Zuckoff is simply not entitled to obtain more in pension benefits from the Plan than she is entitled to receive under the terms the Plan as deemed amended by the REA. Moreover, it is clear that Ms. Zuckoff benefited from the overpayments because her affidavit states that she has struggled financially since Mr. Zuckoff died. Since Ms. Zuckoff benefited from the overpayments, it is certainly fair and equitable to offset such overpayments against the benefits that Ms. Zuckoff would have received under the Joint and 50% Survivorship Option. Alternatively, if Ms. Zuckoff's claim were granted, each monthly payment would be automatically subject to recoupment since the value of the overpayments exceeds the value of the survivor benefits.

Third, Ms. Zuckoff's representative claims that Ms. Zuckoff "reasonably came to expect she would receive half [the monthly pension amount set forth in the Seal Memo] should she outlive her husband." Nothing in Ms. Zuckoff's affidavit or otherwise presented on this appeal establishes how Ms. Zuckoff reasonably came to expect that she would receive any such benefit. Ms. Zuckoff does not contend that any information she received from the Plan or was told by anybody affiliated with the Plan led her to such a belief. The Seal Memo itself promises no survivor benefits unless Mr. Zuckoff died within ten (10) years of his retirement. Ms. Zuckoff's affidavit states that she and her husband "had always expected I would receive a survivor benefit if I outlived Murray." If Ms. Zuckoff learned the legal requirements of the REA during the seventeen years that the Plan paid the Seal Memo benefits, then she failed to object in a timely manner that the Joint and 50% Survivorship Option was not offered. If Ms. Zuckoff failed to apprise the Plan of the error at the time she learned of it, then she cannot reasonably object now to the recoupment of the erroneous overpayments.

Fourth, Ms. Zuckoff contends that the Plan and its sponsor can far more easily absorb any overpayments than she can given her "limited resources and ... a small Social Security benefit." In this regard, it should be noted that the Plan does not have sufficient resources to pay Ms. Zuckoff's claimed benefits and Jewish Telegraphic Agency itself (the Plan

sponsor) is a not-for-profit charitable organization dedicated to informing and educating the Jewish People through its international news service.

Finally, Ms. Zuckoff suggests that the recouping of the erroneous overpayments from her is justified only if other reasonable attempts to collect the erroneous amount have failed, and that she has no reason to believe that alternative means were explored. In fact, the Plan has seriously considered filing a claim against Mr. Zuckoff's estate, but a check with the Surrogate's Court in New York County has revealed that no estate has been probated. Therefore, as a practical matter, the only reasonable avenue available to the Plan is to recoup the erroneous overpayments from the survivorship benefits that would otherwise be due to Ms. Zuckoff.

Accordingly, the Plan hereby denies Ms. Zuckoff's appeal of the denial of her claim for benefits.

Since this final decision constitutes a denial of Ms. Zuckoff's claim, Ms. Zuckoff has the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act. Additionally, Ms. Zuckoff is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to her claim for survivorship benefits.

Sincerely,

Mark J. Joffe
Plan Administrator of the Jewish Telegraphic Agency, Inc. Defined Pension Plan